453 A.2d 1040

**Stephen GDOVIC, Appellant**

v.

**CATHOLIC KNIGHTS OF ST. GEORGE.**

Superior Court of Pennsylvania.

Argued April 28, 1982.
Filed Dec. 17, 1982.

Steven H. Wyckoff, Pittsburgh, for appellant.

John F. Becker, Pittsburgh, for appellee.

Before CERCONE, President Judge, and BECK and MONTEMURO, JJ.

BECK, Judge:

Appellant, Stephen Gdovic, applied for disability insurance with appellee, Catholic Knights of St. George, on March 16, 1976. That application included a check for payment in full of the first year's premium. Appellant received in return a receipt for the premium payment. On March 31, 1976, appellant's application was approved by the insurance company, and on that same date appellant was involved in an automobile accident in which he was injured. Despite the uncontroverted fact that the application was approved on March 31, 1976, the policy was issued bearing April 1, 1976 as its effective date.[1] Appellant filed a claim for benefits which was denied by appellee because the policy was not in effect at the time of the disabling injury.

Appellant initially filed a complaint in the Arbitration Division of the Court of Common Pleas of Allegheny County. After an arbitration hearing, relief was granted to appellant in the amount of $4800.00. Appellee appealed that award and a non-jury trial was held. The trial judge entered a verdict in favor of appellee and dismissed appellant's timely exceptions. An appeal to this Court followed.

---

1. Appellee maintained at trial and on this appeal that it only issued insurance policies on the 1st, 11th and 21st of each month.

That appeal was quashed, 292 Pa.Super. 320, 437 A.2d 65, as the order denying exceptions had not been reduced to judgment and entered on the docket. Pa.R.A.P. 301(c). That order was later reduced to judgment and docketed and is now appealable.

Appellant argues, *inter alia,* that he was covered under the policy for his disabling injury because of his reasonable expectation that coverage had commenced "either as of the date of the payment of the first year's premium or, at the very latest, as of the date of the application which he submitted." (Appellant's brief at 14.) He cites *Collister v. Nationwide Life Insurance Co.,* 479 Pa. 579, 594, 388 A.2d 1346, 1353 (1978), *cert. den.,* 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1978) in support of that proposition:

> The reasonable expectation of the insured is the focal point of the insurance transaction involved here. *E.g., Beckham v. Travelers Ins. Co.,* 424 Pa. 107, 117–18, 225 A.2d 532, 537 (1967). Courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled. Thus, regardless of the ambiguity, or lack thereof, inherent in a given set of insurance documents (whether they be applications, conditional receipts, riders, policies, or whatever), the public has a right to expect that they will receive something of comparable value in return for the premium paid.

We agree and find that ample evidence was adduced at trial to substantiate a reasonable expectation by appellant that he was covered at the time of his injury.

Appellant testified on direct examination that Carl Krupski ("agent")[2] "told me that it would only take a few days to approve the policy and my coverage would go to the date of issuance of the check, which I was assuming that was the day that I was covered." Notes of Testimony ("N.T.") at 17. Appellant, in response to cross-examination, reiterated that he believed the policy covered him from the date of

---

2. The lower court found that Mr. Krupski had no authority to represent the insurance company. We expressly disagree with that finding and note that Krupski's agency is not controverted by appellee.

his check. When asked by appellee's attorney what he understood to be the meaning of the receipt, appellant responded: "I understood that as soon as the policy was approved, that my policy was approved from the date of the check; I was covered from the date that I had issued the check." N.T. at 22.

The insurance agent testified that he could not remember whether he discussed the receipt with appellant: "I can't say, I can't say yes or no. Normally I do, 'This is your receipt for your payment.' Normally I say that you are not covered until the policy is issued." N.T. at 58. The agent acknowledged that the foregoing explanation which he allegedly "normally" provided was in conflict with the wording of the receipt which stated: "No liability assumed by Catholic Knights of St. George, Pittsburgh, Pennsylvania, unless the application is accepted." [3] *Id.*

 While it is not clear that the insurer intended to provide interim insurance, it is clear that it accepted payment in full for the first year's premium at the time of application. In that situation, "it is then up to the insurer to establish by clear and convincing evidence that the consumer had no reasonable basis for believing that he or she was purchasing immediate insurance coverage." *Collister,* 479 Pa. at 594, 388 A.2d at 1353. We find that appellee failed to sustain its burden. The only evidence offered to refute appellant's testimony that he believed he would be covered as of the date the check was issued was that of the agent who could not remember whether or not he even discussed the receipt with appellant.

Accordingly, we find that appellant was covered under the policy from the date of the check that he issued. We find the language of the *Collister* court to be instructive in

**3.** We note that the agent himself apparently was confused as to whether appellant's claim would be covered. That agent helped appellant apply for benefits even though he knew the date of the accident was March 31st, the day before the date represented on the policy to be its effective date.

apprising insurance companies of their disclosure responsibilities if they wish to avoid such interim liability:

If insurers wish to protect themselves from liability during the interim period between the taking of the application and approval (or between the application and successful completion of a required medical examination), all that need be done is to delay acceptance of the applicant's money until that time. If, on the other hand, the insurer wishes to enjoy the substantial benefits it receives by securing the customer's cash at the time of the taking of the application, it must return what the customer can reasonably expect that the insurer is selling: i.e., immediate coverage. Alternatively, the insurer could inform the prospective applicant, *before any money changes hands,* that it does not intend to give the customer anything in return for advance payment, and that the customer is actually paying money now for nothing because no insurance will take effect until approval. Such notification would have to be given *before* the consumer paid the initial premium in order to avoid placing that consumer at the psychological disadvantage of having to ask for a return of the premium if he or she is dissatisfied with such terms. Furthermore, any such notice must be made in a manner calculated to bring the facts of the transaction—that the customer is paying money now, but getting nothing until later—to the customer's attention in no uncertain terms. As such, the notice could not be printed on a receipt.

Only after such an unequivocal showing that the consumer is to be given no immediate benefits in return for his or her cash payment can a court say that the insurer has sustained its burden of establishing by clear and convincing evidence that the consumer could not reasonably have expected to receive immediate coverage in return for the payment of the required premium. The insurer has failed to show this here[.]

*Id.,* 479 Pa. at 599–98, 388 A.2d at 1355 (emphasis in original).

We reverse the order of the trial court and remand with instructions to enter an order consistent with this opinion. Jurisdiction is relinquished.